United States v. Bolido-Delgadillo, Mr. Schindler. Thank you, Your Honor. May it please the court, Mr. Zur. My name is Ralph Schindler. I represent the defendant, Mr. Rebolledo. I'd like to address just one issue, and as to the other issues, I'd like to rely on the brief, which I believe is pretty comprehensive. And the issue I'd like to address with the court is the issue of possession of the drugs involved in this case. But first, I must make a correction to my yesterday, and I noticed on page 15 in one of the footnotes, I have a typo. It should read disjunctive direction or control, and I have disjunctive direction and control, so I would ask that that correction be made. As to Mr. Rebolledo, he was charged in this case not with a distributable quantity. And so we don't have a conspiracy case. We don't have any type of a gun possession case, where I would suggest a different definition of possession would apply. But in this case, we have a drug possession case, and if we look at Judge Tharp's ruling on the post-trial motions and the supplemental appendix at page 12, Judge Tharp notes that, quote, notwithstanding Defendant Rebolledo's clear and pivotal role in setting up this substantial drug deal, his ephemeral direction and control over the cocaine puts this case near the margins of what might issue a possession is ephemeral in this case. Let's talk, I mean, for a minute. Reading this thing, he was an accessory, period. Yes, Your Honor. And he was, and the jury was instructed on that theory of the case, and it was argued to the jury. Your Honor, in the pretrial conference, I made the accessory to the confidential informer, and that his role as a broker was to go out on behalf of the buyer, who was the CI, and that he couldn't be the accessory to the CI. And Judge Tharp and the government agreed with that position. And if you'll note in the judge's opinion that the accessory, the government effectively waived the accessory argument. How did they waive it? They didn't argue it. There was an instruction given, but I think the limitation. They did argue it. They did, to some extent. But again, look at the facts of the case. Significant. I read the arguments. But let's look at the facts of the case. He had never met Ramirez until the day of the transaction. Orozco testified he'd never met defendant until the day of the transaction. He had never heard up with the drugs, that he was an accessory to either Ramirez or to Orozco. Ramirez was never indicted. Ramirez was arrested the same day, but then released. Ramirez was the guy that had the 20 kilos. For some reason, he's not in this case. The driver is in the case. These two have never met. So I guess you could proceed under an accessory argument, but I think it's difficult. And so I think we're back to the definition of what is possession. Did he have possession? Maybe we're not. I mean, do you have any case law that say this guy can't be, as a matter of law, an accessory? Well, I cite a couple of cases, and I think in Manzella, the argument, the court found that the argument had been waived in Manzella. Now, in your motion to, your post-trial motion, you didn't mention the accessory theory at all, did you? No, Your Honor. And the government only replied to the matter you raised, which was the possession, right? Yes, Your Honor. Judge Thorpe thought that was a waiver on the part of the government. How's that a waiver? Your Honor, I don't know. It seems to be pretty thin cases for a waiver, doesn't it? But again, Your Honor, if we look at the facts of the case in terms of who he would be an accessory to, he had never met Ramirez. Ramirez is not a defendant in the case. Isn't he doing what most brokers do? That is, you're helping both the buyer and the seller? Yes, Your Honor, I would agree that he is the traditional broker in the case, and that, you know, the question is, in the broker cases, and Judge Flom, you're the author of two of the three cases that I cite here, Manzella and Ortega, there needs to be some exercise of control over the drugs in order for there to be a finding of possession. There has to be some type of an exercise of control. But I'm going back to the aiding and abetting notion, though. Clearly, Orozco was in possession for a time with intent to distribute, and why isn't it fair to treat your client as aiding and abetting him in that effort? Your Honor, I don't know. All I know is the government didn't make that argument. I mean, in closing argument, they said, well, he walked into the little room, he gave the instruction, put it over there, and that constitutes direction and control. That was the government's argument. So, and we would contend as a matter of law that that does not constitute sufficient direction and control. So, and again, I think the testimony of Orozco is pretty clear as to what exactly happened, and it's on page 10 of my brief. He testified that Rebieto opened the gate, told Orozco where to park the car. Orozco opened his trunk, noticed the clothes he had had in the duffel bag were now scattered around the truck. The trunk of the car and the drugs were in the bag. Orozco took the bag to the bathroom in the barn, and he testified that Rebieto told him to leave the drugs by the bucket in the bathroom. Again, transcript 249. Orozco asked Rebieto where he wanted the drugs because Orozco was not going to leave them in the duffel bag because it was his personal bag. Rebieto said he would ask Sergio. They left the room when the police arrived. So it was all within two minutes busted. So we would contend, and the actual transcript of what Orozco says is on page 17 of the brief, and you'll see that the judge's comment that this was an ephemeral possession is supported by the testimony of Mr. Orozco, again highlighted in bold on page 17. And we would contend that just because Mr. Rebieto was in the room at the same time the drugs came there, that his direction to put it over there, if in fact it was said, because if you recall the testimony of the confidential informant, was 180 degrees different. He said no such conversation occurred. But viewing the evidence in the light most favorable to the government, I think we're bound by Orozco's testimony. And his testimony was that Rebieto said, put the bag over there. Again, remember, the $200,000 had never exchanged hands. So the price of the drugs, they hadn't been paid for. So if in fact Rebieto was in his role as a broker for the buyer, we would contend there was no possession. Mr. Schindler, was there evidence at trial that Ramirez told Orozco to deliver the drugs to your client? There was evidence that about an hour and a half before the actual transaction, Mr. Ramirez drove up in his car with Orozco, and Ramirez told Orozco, this is the guy you're to deliver it to. And I think there was a limiting instruction given by the court at that time, because I had objected to that. And a limiting instruction was given. And it was given, the judge told the jury that they should consider that evidence only in terms of, I believe it was Rebieto's state of mind. And with that, Your Honor. Was Orozco's state of mind? No, Rebieto's, I believe. Okay. Okay. I'm going to save some time, Mr. Schindler. Thank you, Your Honor. All right, thank you. Mr. Zurf. May it please the Court, Paul Zurf of the United States. The defendant says that there was no evidence tying Ramirez to the defendant or the defendant to the supplier. That's just not the case. I ask Your Honors to look at transcript beginning at pages 131 and then again page 141. Those two sections of the transcript are where the government introduced the translations of the recorded conversations between the defendant and the CS prior to the deal, first the day before the deal, and then the day of the deal. And that evidence lays out that the defendant was very connected to the supplier. The defendant told the source on the day of the deal that Ramirez, the supplier, would be arriving later with the person who was going to be delivering the drugs. The day before that on August 15th, the day before the deal, when the defendant arrived at the farm to talk with the source, the defendant said they aren't going to be delivering today. So obviously the jury could infer from that statement that the defendant had already been talking with the supplier, the supplier being Ramirez, and the supplier had told the defendant that the drugs weren't coming. There's additional evidence, page 147 of the transcript. The defendant told the source that there were 13 more kilograms of cocaine available for sale after these six kilograms of cocaine. Your Honors can infer two things, and the jury was able to infer two things from that. One, that the defendant was in fact talking with the source, and so the defendant knew the supplier, the defendant was working with the supplier. And two, that the defendant was trying to make this six-kilogram deal succeed. That's significant for the aiding and abetting argument that the government did in fact put forward to the jury. It was an important piece because the defendant's trying to get that six kilograms and trying to get the source, the CS, to sell off the six kilograms so that the CS would be willing to buy an additional 13 kilograms from the defendant and from the defendant's supplier. All of this, Your Honors, is evidence that the defendant was with the supplier, the defendant knew the supplier, the defendant was working with the supplier hand-in-hand, and it undermines the defendant's argument. Simply put, the jury's verdict, there was sufficient evidence to support the jury's verdict in this case, both on the theory, the direct theory that the defendant was in fact in constructive possession of the drugs for those few moments that the defendant and Orozco were standing in the bathroom together without the CS and with no money, having changed hands, and two, under the aiding and abetting theory, that the defendant was aiding and abetting co-defendant Orozco's own possession of the drugs and trying to make Orozco's distribution of the drugs succeed. Unless Your Honors have any questions on either this point or any of the other points raised by the defendant, the government will rest on its briefs. Go ahead. Judge Tharp thought that this accessory theory had been waived, I gather, from Rule 59. Could you speak to that for a minute? Of course, Your Honor. And the way I read Judge Tharp's footnote was that he was suggesting that it was waived, but he didn't actually come out and say it. The government disagrees with that point. First off, there was a jury instruction presented to the jury on the aiding and abetting theory. Second off, during closing argument, the first part of the summation argument presented by the government was to explain to the jury the elements of the offense and how the jury had to view the evidence in light of those elements, and during that recitation of the elements of the offense, discussed the aiding and abetting theory. So it's actually put forth during the argument. And then the government switched over to talk about what the evidence was that was presented, and that evidence equally supported a constructive possession theory and the aiding and abetting theory. Government talked about the evidence I just discussed with you, talked about all the recorded conversations, the significance of all those recorded conversations, and armed with the aiding and abetting instruction that the government discussed with the jury and that the jury received from the judge, the jury could take those facts, that evidence, and reach its conclusion based on the aiding and abetting theory. Counsel, I wanted to raise with you the concern about the agent's testimony on the condition of the tape recording. I assume all of us are familiar with the idea that sometimes tapes malfunction and sometimes batteries run out. But what was offered at trial was a very different explanation, that this was an edited tape. I'm not tracking that, and I'm troubled by that explanation. So now I don't believe that Special Agent Prezeo's testimony was that in any way that it was an edited tape. Special Agent Prezeo was just confused by the one-page worth of questions that he received from government counsel on what happened. The government was trying to front the issue that the tape did, in fact, malfunction, that we only received the first hour of the recording. And Special Agent Prezeo, as I read the transcript and as I was there hearing the testimony, believed that he just got it wrong. He just didn't quite understand what was being asked. The question was, the recording from the 16th, is that a complete recording of all three hours, or is it some subset of those three hours? Answer, it's a subset. And what is the reason why only a subset was recorded? Answer, because there's a lot of social conversations on there that were not part of the deal. Right, that's just confusion. That's not him saying that he's turning on and off the tape or that the source is turning on and off the tape. I understand his answer to mean that he understood the question was, why isn't it that the full recording is all drug talk? Most of the recording, most of what we got from that first hour of conversation between the source and the defendant on August 16th had little to nothing to do with the drug deal. And so I think that's what he was saying. And, Your Honor, the government did try to clean that up through that course of questioning. And more importantly, the defense had every opportunity to cross-examine Special Agent Brezeo on that point. And Special Agent Brezeo got it right during the cross-examination. He said, he testified that the tape ended at, I believe it was right around 10.40, 10.45, and that the deal took place according to the report that he prepared about an hour and a quarter later. So through the defendant's cross-examination, the defendant very clearly got out to the jury that the tape stopped before the drug deal took place. The source was not able to turn the recording off and on. That was the source's testimony, correct, and Special Agent Brezeo's testimony as well. That was correct. And what was presented was not an edited version? Correct. I take that back. What was presented to the jury was an edited version of that first hour. And it was, maybe I need to give even further explanation. This was a Spanish-language recording. So the full hour of the recording, my memory was, was not presented to the jury. What was presented to the jury was the English translation and transcripts of the pertinent narcotics-type conversation that took place over the course of that hour. The beginning of that conversation was introduced through a request by the defense. The final few seconds of that hour of the conversation was introduced. The parties asked for an instruction. I believe the parties received an instruction. The jury received an instruction about why it didn't get, or that it wasn't to consider the fact that it didn't get the entirety of the hour of that conversation. And the defense, again, had an opportunity to cross-examine and had an opportunity to argue and did argue that the government was up to some no good, up to some nefarious thing when the recording stopped an hour and a quarter before the drug deal. Counsel, if I can bring you back to the first issue just for a moment. Sure. Counsel for the defendant made the representation that the government took the accessory theory off the table at the pretrial conference. Is that correct? I don't believe so, no, Your Honor. And, again, the government asked for, in its pretrial proposed jury instruction submissions, for an aiding and abetting instruction. I understand. So I have no reason to think that the government certainly didn't overtly, didn't intend to take the aiding and abetting theory off the table. And I don't understand the defendant's theory, frankly. Thanks. I asked, Counsel, for the defendant, and I guess I should ask you as well, is there any, do you have any case law that we could rely on, on the theory that someone in this almost broker kind of situation can, in fact, be an accessory to the purchase of the drugs? Absolutely, Your Honor. Or to the seller, I guess, to the purchase of the drugs. Sure. And as an accessory, it doesn't matter which side he's representing, which side he's helping, as Judge Hamilton noted during the defendant's argument, can be helping both sides, just wants the thing to succeed. The Ortega case, cited by the defendant, is actually instructive on this very point. The Ortega case discussed both the constructive possession theory and the aiding and abetting theory, and in that case, cited with the defense that the government, in that instance, hadn't probably introduced sufficient evidence to establish constructive possession, but had, in fact, introduced sufficient evidence to support aiding and abetting. And in that case, there was a person, Ortega, who was sitting in a truck, guarding a small bag of heroin. The owner of the drugs was in a coffee shop meeting with the buyer, who turned out to be an FBI informant. The three of them meet together in the van, and while at the back of the van, Ortega, the man who was sitting in the van, points to the drugs and says it's of good quality, and that evidence was sufficient in the Ortega case to support an aiding and abetting theory of possession of the drugs. I also do want to point out the Manzella case that's referenced by Judge Tharp that the defendant mentioned. In that case, I was reading it again last night, the significant difference between that case and ours here is that the government, in that case, didn't request an aiding and abetting instruction, and no aiding and abetting instruction went to the jury. That's entirely different from the situation that we have in this case. So again, unless there are further questions from this court, I ask this court to affirm the judgment of the district court and to affirm the jury's finding. Thank you, Mr. Shindler. Thank you. Mr. Shindler. Thank you, Your Honor. Just a couple points. One, in the pretrial conference, I made the argument that since the CI is a government agent, that the defendant couldn't be charged with aiding a government agent in the possession of the cocaine, and Judge Tharp agreed with that. Now, nothing was said about aiding or abetting Orozco or Ramirez, but in terms of aiding and abetting Sergio, the government agent, it was agreed that the government would not make that argument because the government agent could never, as a government agent, could never possess it. So that was the argument there. And in terms of whether or not there was a waiver of the argument below, Judge Tharp's opinion in footnote number two in the special appendix at page 11 says that aiding Orozco, he says, quote, that might have been enough to support a conviction based on an argument that Rebellero facilitated Orozco's possession with intent to distribute, but although the jury received an aiding and abetting instruction, the government made only passing reference to that instruction in its initial closing argument, never argued that Rebellero could be guilty based on facilitation of Orozco's possession and does not defend the jury's verdict on that basis in its response. So that's, again, supplemental appendix 11. As to the issue of whether a false statement was made by Agent Brazawa, in the reply brief, page six and seven is excerpts of the testimony of the agent. He was directly asked, all right, were all three hours of these captured? He says yes. Captured meaning were all three hours successfully recorded by the recording device that you provided to the CI? Yes. It's pretty clear that he's giving the impression that all three hours were captured. Now, you know that when the government presents its case, it had a recording in one, I believe, and it contains snippets of conversations that were recorded on this date, and this is what he's introducing into evidence. And the preface is, well, were all three hours of the conversation recorded? Yes, they were. But these are just snippets on N1 of what was recorded. And then he goes on. The recorder has a memory life and a battery life of approximately three hours. So on this particular day, on the 16th, did the length of the meeting simply exceed the capacity of that recording device? Yes. Not true. So we would contend, at the very least, we should have gotten an instruction from the judge about spoilation of evidence. But we requested one, but the judge denied it. So if there's nothing further, Your Honor, thank you very much. Thank you, Mr. Schindler. And thanks to all counsel. Mr. Schindler, you have the additional thanks to the court for accepting and ably representing the defendant. Thank you.